UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NELSON NED FIGUEIRA, deceased, by and through JUDITE CASTILLO,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SUTTER, et al.,[1]<br><br>Defendant. | No. 2:15-cv-00500-KJM-AC<br><br>ORDER |

Judite Castillo alleges her son, Nelson Ned Figueira, who suffered from mental illness, committed suicide in the Sutter County Jail soon after his arraignment on drug charges. He was thirty-eight at the time of his death. Castillo initiated this case on his behalf against Yuba

---

[1] Castillo sues twenty unknown "Doe" defendants. The Ninth Circuit has held that if a defendant's identity is not known before the complaint is filed, a "plaintiff should be given an opportunity through discovery to identify the unknown defendants." *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)) (quotation marks omitted). Castillo is warned, however, that Doe defendants will be dismissed if "it is clear that discovery would not uncover the[ir] identities or that the complaint would be dismissed on other grounds." *Id.* (quoting *Gillespie*, 629 F.2d at 642) (quotation marks omitted). Castillo is also warned that Federal Rule of Civil Procedure 4(m) is applicable to Doe defendants. By that rule, the court must dismiss defendants who have not been served within 120 days after the filing of the complaint, unless good cause is shown. *See Glass v. Fields*, No. 09-00098, 2011 U.S. Dist. LEXIS 97604 (E.D. Cal. Aug. 31, 2011); *Hard Drive Prods. v. Does*, No. 11-01567, 2011 U.S. Dist. LEXIS 109837, at *2-4 (N.D. Cal. Sep. 27, 2011).

and Sutter Counties, the Sheriff of Sutter County, several Sutter County Jail administrators, and the correctional officer who had direct contact with Figueira just before his death. The defendants now move to dismiss the complaint for failure to state a claim upon which relief can be granted. The matter was submitted without a hearing, and the motion is granted in part with leave to amend.

I.   FACTUAL ALLEGATIONS

For purposes of this motion, the court assumes the following allegations are true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Figueira began suffering from schizophrenia, bipolar disorder, and depression in his late teens. First Am. Compl. ¶ 22. He had a history of suicidal tendencies and spent a significant period of his adult life seeking treatment for his illness in mental health facilities. *Id.* ¶¶ 22–23.

Figueira was arrested on March 4, 2013 and charged with possession of drugs and resisting arrest. *Id.* ¶ 23. Because he had a known history of mental illness and suicidal tendencies, he was evaluated by an employee of Sutter-Yuba Mental Health Services, who determined he did not pose a danger to himself at that time. *Id.* He was placed in custody at the Sutter County Jail. *Id.* On March 6, 2013, Arthur Brandwood, a correctional officer at the jail, transported Figueira to the Sutter County Superior Court for his arraignment. *Id.* ¶¶ 14, 23–24. During or soon after the arraignment, Figueira learned he faced a maximum term of three years in jail if he was convicted. *Id.* ¶ 24. He became distraught, entered an "obvious psychotic state," and believed he had already been convicted and sentenced. *Id.* ¶¶ 24, 35. His family members and friends warned the defendants of their concerns Figueira would commit suicide. *Id.* ¶ 34c. Brandwood took Figueira back to the jail, and the two spoke about "the issue of jail time." *Id.* ¶ 24.

Figueira was placed in a cell in the Sutter County Jail to await a preliminary hearing. *Id.* ¶¶ 23, 27. The Jail's written policy on mentally ill inmates reads as follows:

> Inmates with suspected mental disorders, who are a potential danger to themselves or to others or appear to be gravely disabled shall be promptly evaluated and, if clinically indicated, transferred to an appropriate psychiatric treatment facility. . . . Regardless of the time of presentation, significantly disordered behavior should be

> evaluated promptly, within twenty-four hours at the latest. The Jail Lieutenant or Jail Facility Manager will be contacted and will make every effort to transfer mentally disordered inmates to appropriate facilities. All attempts and efforts to implement the transfer of such inmates, whether successful or note [sic] shall be documented.

*Id.* ¶ 28. Castillo alleges the defendants did not comply with this policy in Figueira's case. *Id.* Despite his distress and unstable condition, the jail staff did not request a mental health evaluation, and he was not placed on suicide watch. *Id.* ¶ 26. The staff had no line of sight to Figueira's cell, could not hear what he was doing, and could not easily monitor his condition. *Id.* ¶ 27. In Figueira's cell was a bed sheet and bunk bed. *Id.* ¶ 29. He fashioned a noose and was found facing the cell wall with the sheet around his neck. *Id.* ¶¶ 29–30. Officers were unable to revive him, and he was transported to the hospital, where he died the next day. *Id.* ¶¶ 30–31.

In the three year period predating Figueira's death, two other inmates had died in the Sutter County jail in circumstances that suggest the jail provided inadequate healthcare. *Id.* ¶ 32. Rodney Bock committed suicide in the jail in April 2010, and Nathan Prasad died in January 2011 after his health deteriorated over a period of several days. *Id.*

Castillo filed a complaint in this court on March 5, 2015. Compl., ECF No. 1. The defendants are Sutter and Yuba Counties; J. Paul Parker, the Sutter County Sheriff; David Sampson, the Sutter County Jail Division Commander; Norman Bidwill, the Sutter County Jail Corrections Lieutenant; Kristin Garza, the Sutter County Jail Corrections Sergeant; and Arthur Brandwood, the correctional officer noted above who had personal contact with Figueira just before his death. First Am. Compl. ¶¶ 8–14. Castillo asserts five claims:

(1) Violation of Figueira's Fourteenth Amendment rights as a pretrial detainee under 42 U.S.C. § 1983, against all the defendants, *id.* ¶¶ 33–38;

(2) Municipal liability under § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978), against Sutter and Yuba Counties, *id.* ¶¶ 39–44;

(3) Supervisory liability under § 1983 against Parker, Samson, Bidwell, and Garza, *id.* ¶¶ 45–50;

3

(4) Violation of her Fourteenth Amendment rights related to the loss of her parent-child relationship with Figueira, under § 1983, against all the defendants, *id.* ¶¶ 51–52; and

(5) Violations of Title II of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act of 1973, against all the defendants, *id.* ¶¶ 53–60.

Castillo seeks damages and her costs and fees. *Id.* at 16–17. The defendants filed a joint motion to dismiss on July 13, 2015, arguing the complaint is unsupported by sufficient factual allegations. ECF No. 8. Castillo opposed the motion, ECF No. 10, and the defendants replied, ECF No. 12.

The court first reviews the legal standard applicable to the defendants' motion, and then addresses each claim in turn.

II. <u>LEGAL STANDARD</u>

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The motion may be granted only if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013). The court assumes these factual allegations are true and draws reasonable inferences from them. *Iqbal*, 556 U.S. at 678.

A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. *Iqbal*, 556 U.S. at 678. In the same vein, conclusory or formulaic recitations of elements do not alone suffice. *Id.* (quoting *Twombly*, 550 U.S. at 555). Evaluation under Rule 12(b)(6) is a context-specific task drawing on "judicial experience and common sense." *Id.* at 679. And aside from the complaint, district courts have discretion to examine documents incorporated by reference, *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012); affirmative defenses based on the complaint's allegations, *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013);

4

and proper subjects of judicial notice, *W. Radio Servs. Co. v. Qwest Corp.*, 678 F.3d 970, 976 (9th Cir. 2012).

III.   DISCUSSION

  A.   Fourteenth Amendment: Deliberate Indifference to Serious Medical Needs

Castillo asserts this claim under 42 U.S.C. § 1983.  That section provides as follows, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. She alleges violations of Figueira's Fourteenth Amendment rights on his behalf.  First Am. Compl. at 10.  Federal law recognizes the viability of such a survival action. *See, e.g.*, *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010); *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1241–42 (9th Cir. 2010).

As a preliminary matter, though Castillo alleges this claim against each defendant, Sutter and Yuba Counties cannot be liable under § 1983 if Castillo alleges only that their employees or agents committed constitutional torts.  *Monell*, 436 U.S. at 691; *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997).  Nevertheless, the Counties may be liable if their employees' unconstitutional actions were the result of a "longstanding practice or custom," *Ulrich v. City & Cnty. of S.F.*, 308 F.3d 968, 984–85 (9th Cir. 2002), as Castillo alleges in her second claim, First Am. Compl. ¶¶ 39–44.  The first claim is therefore dismissed, without leave to amend, with respect to Sutter County and Yuba County.

As to the claim against remaining defendants, pretrial detainees have a Fourteenth Amendment right to be free from punishment.  *Bell v. Wolfish*, 441 U.S. 520, 537 n.16 (1979). This protection is distinct from that of the Eighth Amendment, *id.*, but the Ninth Circuit has long applied the same legal standard to cases of both varieties, *see Clouthier*, 591 F.3d at 1241 (collecting authority); *cf. Castro v. Cnty. of Los Angeles*, 797 F.3d 654, 664–65 (9th Cir. 2015) (finding *Clouthier* remains good law despite *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015)).

5

1  Here, Castillo must show the defendants acted with deliberate indifference to his serious medical
2  needs.  *Clouthier*, 591 F.3d at 1241.

3  The Supreme Court defined "deliberate indifference" in *Farmer v. Brennan*,
4  511 U.S. 825 (1994).  "[A] prison official cannot be found liable under the Eighth Amendment
5  for denying an inmate humane conditions of confinement unless the official knows of and
6  disregards an excessive risk to inmate health or safety."  *Id.* at 837.  "[T]he official must both be
7  aware of facts from which the inference could be drawn that a substantial risk of serious harm
8  exists, and he must also draw the inference."  *Id.  See also Connick v. Thompson*, 563 U.S. 51,
9  131 S. Ct. 1350, 1360 (2011) ("Deliberate indifference is a stringent standard of fault, requiring
10 proof that a municipal actor disregarded a known or obvious consequence of his action."
11 (citations, internal quotation marks, and alterations omitted)).  In practical terms, to prevail at
12 trial, a plaintiff must show he had a serious medical need, the defendants were subjectively aware
13 of that need, and they did not adequately respond.  *Simmons*, 609 F.3d at 1017–18; *Conn v. City*
14 *of Reno*, 591 F.3d 1081, 1096 (9th Cir. 2010), *cert. granted and vacated sub. nom. City of Reno,*
15 *Nev. v. Conn*, 131 S. Ct. 1812 (2011), *opinion reinstated in relevant part*, 658 F.3d 897 (9th Cir.
16 2011); *see also Clouthier*, 591 F.3d at 1244 (expressing the test in terms of the defendants'
17 awareness of a "substantial risk of serious harm" and their deliberate indifference to that risk).

18 Here, the defendants agree "a heightened suicide risk can present a serious medical
19 need."  *Simmons*, 609 F.3d at 1018.  They also assume Castillo has alleged their response was
20 inadequate.  *See* Mot. Dismiss at 3–4.  But they argue the complaint's factual allegations do not
21 plausibly establish their subjective knowledge of a risk to Figueira's health and safety.  *Id.* at 4.

22 *Simmons* and *Clouthier* both concerned the suicides of pretrial detainees.  In
23 *Simmons*, the Ninth Circuit affirmed the district court's order granting summary judgment for the
24 defendants.  *See* 609 F.3d at 1018–20.  Before the decedent's death, he was on "Level II suicide
25 watch," which designated emotional instability but not an imminent risk of suicide.  *Id.* at 1020.
26 One nurse was aware that he had previously attempted to take his life, suffered from depression,
27 and was "at some risk of making another attempt."  *Id.* at 1018.  She also knew that at the time of
28 his death, a month had elapsed since his previous attempt, he had attended counselling, took

6

antidepressants, and his condition appeared to be improving, although he appeared 'sulky.'" *Id.* Another nurse observed that the decedent had been cheerful one day. *Id.* at 1019. The officer in charge of the jail did not check on the decedent every fifteen minutes, as required by the jail's suicide prevention policy, but he did not know of the decedent's previous suicide attempt, depression, or medication, and did not know of any suicidal threats or gestures. *Id.* at 1020. At summary judgment, these facts were insufficient to show the two nurses or Sergeant knew the decedent "was at acute risk of harm," *id.* at 1018 (quoting *Conn*, 591 F.3d at 1097) (emphasis omitted), or that they were subjectively aware "of a substantial risk of imminent suicide," *id.* (quoting *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 990 (7th Cir. 1998)).

In *Clouthier*, a defendant staff member was aware the decedent had previously attempted suicide and heard he should be "constantly monitored." 591 F.3d at 1244. The same staff member also heard reports the decedent was "truly suicidal" and "the real deal"; he told others to keep utensils away from the decedent. *Id.* Yet the decedent was removed from an observation room, given ordinary bedding, and then hanged himself. *Id.* at 1239–40. This was sufficient to create a genuine dispute of material fact surrounding this first staff member's deliberate indifference. *Id.* at 1244–45. But the court found the plaintiffs had not produced enough evidence to show two other defendants were deliberately indifferent. Although these defendants knew of the decedent's previous suicide attempts and of a general danger of his suicide, log book entries suggested he had shown signs of improvement, and there was no evidence the defendants knew he was "actively suicidal." *Id.* at 1246–49.

*Simmons* and *Clouthier* were appeals from summary judgment, a considerably different procedural vantage point than an early motion like this one. At the pleadings stage, a plaintiff need only paint a plausible picture of recovery, *see Iqbal*, 556 U.S. at 678, not a meticulously detailed one, *Twombly*, 550 U.S. at 555. The Ninth Circuit and Supreme Court have phrased the Rule 12 test in comparative terms, asking whether an "obvious alternative explanation" forecloses the theory of the plaintiffs' complaint or makes the plaintiff's theory implausible. *See Iqbal*, 556 U.S. at 682; *Twombly*, 550 U.S. at 567; *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996–97 (9th Cir. 2014); *see also Niendorf v. Gooding*

*Cnty., Idaho*, No. 09-175, 2010 WL 742857, at *1 (D. Idaho Feb. 25, 2010) ("[T]he allegedly necessary 'substance' of [the defendant's] conduct is, alas, in the possession of either the deceased or Defendants themselves which . . . puts Plaintiffs in a 'Catch–22' and hampers them from incorporating the specificity Defendants now argue is required.").

The motion to dismiss is denied as to defendant Brandwood. Castillo alleges the jail's staff knew Figueira had a history of mental illness and suicidal tendencies and that they thought this history sufficiently worrisome to evaluate him for the possibility he posed a danger to himself. She alleges that after his arraignment, Figueira's behavior changed: he became distraught and confused, entered an obviously psychotic state, and clearly misunderstood what had happened. Brandwood interacted personally with Figueira both before and after the arraignment, noticed the change, and knew Figeuira had a history of mental illness and suicidal tendencies. Castillo alleges Brandwood should have followed the jail's policy on inmates with suspected mental disorders, but did not, and as a result, Figueira died. These allegations give Brandwood "fair notice" of the case against him, allow him to prepare a defense, and with all reasonable inferences in Castillo's favor, "plausibly suggest an entitlement to relief." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

But as to the remaining defendants, the complaint's allegations are too conclusory to withstand the defendants' motion. Castillo alleges only that these other defendants knew or should have known, at some unspecified moment, that Figueira posed a danger to himself. These allegations do little more than frame the elements of deliberate indifference. Moreover, Castillo alleges Sutter-Yuba Mental Health Services did conduct an evaluation of Figueira's mental health before his arraignment, but found he posed no danger to himself. She does not allege how anyone other than Brandwood knew Figueira's mental state changed after his arraignment. Assuming the complaint's factual allegations are true, no assertions of subjective knowledge tie Parker, Samson, Bidwell, or Garza to Figueira's mental state post-arraignment, just as was true for the defendants granted summary judgment in *Simmons* and *Clouthier*.

Because the motion to dismiss this claim is granted on the basis of factual shortcomings rather than futility, and because this case is in its early stages, the motion is granted

8

1   with leave to amend.  *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047,
2   1058 (9th Cir. 2011) ("[W]hen a viable case may be pled, a district court should freely grant leave
3   to amend.").

    B.      Supervisory Liability

"In a § 1983 suit . . . —where masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer." *Iqbal*, 556 U.S. at 677.  But supervisors can be liable for their own conduct.  *Peralta v. Dillard*, 744 F.3d 1076, 1085 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 946 (2015).  Here, Castillo "may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." *Baca*, 652 F.3d at 1207.  To succeed, she must allege sufficient factual matter to show a supervisor's breach of duty "was the proximate cause of the injury." *See id.*  For the reasons described in the previous section, she has not cleared this hurdle.  She has not alleged facts showing Parker, Samson, Bidwell, or Garza were aware of Brandwood's actions and acquiesced to them.  As above, the motion is granted with leave to amend.

    C.      Loss of Parent-Child Relationship

"It is well established that a parent has a fundamental liberty interest in the companionship and society of his or her child and that the state's interference with that liberty interest without due process of law is remediable under 42 U.S.C. § 1983." *Crowe v. Cnty. of San Diego*, 608 F.3d 406, 441 (9th Cir. 2010) (quoting *Lee v. City of L.A.*, 250 F.3d 668, 685 (9th Cir. 2001)) (alterations omitted).  "To amount to a violation of substantive due process, however, the harmful conduct must 'shock the conscience' or 'offend the community's sense of fair play and decency.'" *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1079 (9th Cir. 2011) (quoting *Rochin v. California*, 342 U.S. 165, 172–73 (1952)) (alterations omitted). Actions that "shock the conscience" are "arbitrary," *Collins v. Harker Heights*, 503 U.S. 115, 128 (1992), "egregious," "deliberate," and "unjustifiable by any government interest," *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–49 (1998), "brutal," and "offensive," *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957), deny rights "implicit in the concept of ordered liberty," *Rochin*, 342 U.S. at 169, and

violate the "decencies of civilized conduct," *Id.* at 173.  Negligent conduct does not shock the conscience.  *Woodrum v. Woodward Cnty.*, 866 F.2d 1121, 1126 (9th Cir. 1989).

Whether a defendant's conduct shocks the conscience turns on the facts of the particular case.  *See Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 372 (9th Cir. 1998); *Walsh v. Tehachapi Unified Sch. Dist.*, 827 F. Supp. 2d 1107, 1119 (E.D. Cal. 2011). Certain classic cases tell horrific stories of a disabled child mistaken for another person, falsely arrested, extradited, and imprisoned, his parents repeatedly misinformed of his whereabouts, *Lee*, 250 F.3d at 685–86, or a boy left alone in the school bathroom with a gun after he attempted to rob his teacher of spare change, then showed the vice principal a suicide note, *Kelson v. City of Springfield*, 767 F.2d 651, 652–53 (9th Cir. 1985).  *See also Cotta v. Cnty. of Kings*, 79 F. Supp. 3d 1148, 1177–79 (E.D. Cal. 2015) (collecting cases), *recons. in part on other grounds*, No. 13-359, 2015 WL 521358 (E.D. Cal. Feb. 9, 2015).

Deliberately indifferent conduct may shock the conscience.  *Lewis*, 523 U.S. at 849–50; *accord Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010) ("Where actual deliberation is practical, then an officer's 'deliberate indifference' may suffice to shock the conscience.").  The Ninth Circuit has applied this doctrine to a detained or incarcerated person's apparent suicide.  *See Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013); *Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986).  In *Lemire*, the circuit court found triable issues of fact precluded summary judgment on the plaintiffs' claims for deliberate indifference because factual disputes surrounded two defendants' failure to administer CPR.  *Id.* at 1085.  Citing *Lewis*, the court concluded that for this reason, summary judgment was also inappropriate as to the family members' Fourteenth Amendment claims.  *See id.* (citing 523 U.S. at 849–50).  District judges in this circuit have reasoned similarly in recent cases.  *See Estate of Claypole v. Cnty. of San Mateo*, No. 14-02730, 2014 WL 5100696, at *6 (N.D. Cal. Oct. 9, 2014) ("Plaintiff has alleged facts sufficient to state a claim for deliberate indifference . . . . Because the conduct alleged, if true, would shock the conscience, the Court concludes that Plaintiff has stated a substantive due process claim as well); *Estate of Prasad ex rel. Prasad v. Cnty. of Sutter*, 958 F. Supp. 2d 1101, 1116 (E.D. Cal. 2013) ("A prison official's deliberate

10

indifference to a prisoner's serious medical needs shocks the conscience and states a claim under the substantive due process clause.").

Because the complaint sufficiently alleges a claim for deliberate indifference against Brandwood, but no other defendant, the motion is granted and denied to the same extent, with leave to amend.

D. Municipal Liability

"A municipality or other local government may be liable under [§ 1983] if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation." *Connick*, 131 S. Ct. at 1359. In *Clouthier*, the Ninth Circuit recognized three theories of municipal liability:

> First, a local government may be held liable when implementation of its official policies or established customs inflicts the constitutional injury. We have referred to these sorts of local government conduct as acts of commission.
>
> Second, under certain circumstances, a local government may be held liable under § 1983 for acts of omission, when such omissions amount to the local government's own official policy. To impose liability on a local government for failure to adequately train its employees, the government's omission must amount to deliberate indifference to a constitutional right. This standard is met when the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. . . .
>
> . . .
>
> Third, a local government may be held liable under § 1983 when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it. . . . There must, however, be evidence of a conscious, affirmative choice on the part of the authorized policymaker. . . .

591 F.3d at 1249–50 (citations and internal quotation marks omitted).

No heightened pleading standard applies to § 1983 claims, *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993), but to plead a *Monell* claim and withstand a Rule 12(b)(6) motion to dismiss, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of

11

1  underlying facts to give fair notice and to enable the opposing party to defend itself effectively."
2  *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr*,
3  652 F.3d at 1216).

4  Castillo cites another decision from this district to argue that in the Ninth Circuit,
5  "a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss
6  even if the claim is based on nothing more than a bare allegation that the individual officers'
7  conduct conformed to official policy, custom, or practice." Opp'n at 6 (quoting *Cabral v. Cnty.
8  of Glenn*, 624 F. Supp. 2d 1184, 1192 (E.D. Cal. 2009)). This court cannot agree. Following the
9  trail of *Cabral's* authority on this point leads to *Guillory v. County of Orange*, 731 F.2d 1379,
10 1381–82 (9th Cir. 1984). In *Guillory*, the district court had dismissed a § 1983 claim because it
11 understood the plaintiffs to rely on a respondeat superior theory of liability. *Id.* at 1381. The
12 Ninth Circuit reversed, noting the complaint alleged the defendants acted according to a policy
13 and custom. *Id.* at 1381–82. "Assuming the truth of these allegations," the circuit court reasoned,
14 "it does not appear to a certainty that appellants would not be entitled to any relief." *Id.* at 1382.
15 This language, "appears to a certainty," may be traced to the Supreme Court's holding in *Conley
16 v. Gibson* "that a complaint should not be dismissed for failure to state a claim unless it appears
17 beyond doubt that the plaintiff can prove no set of facts in support of his claim which would
18 entitle him to relief." 355 U.S. 41, 45–46 (1957).

19 The Supreme Court disavowed *Conley's* construction of Rules 8 and 12 in
20 *Twombly*, 550 U.S. 544, and the *Twombly* standard applies to *Monell* claims, *AE ex rel.
21 Hernandez*, 666 F.3d at 637; *Starr*, 652 F.3d at 1216. The court therefore concludes that it is no
22 longer the law in this circuit, or any other, that a complaint may survive a motion to dismiss if it
23 contains "nothing more than a bare allegation that the individual officers conduct conformed to
24 official policy, custom, or practice." This is also the clear implication of *Hernandez*, 666 F.3d
25 at 637.

26 Here, Castillo appears to rely on *Clouthier's* second and third theories of § 1983
27 liability, for "acts of omission" and an official's ratification of a subordinate's actions. 591 F.3d
28 at 1249. As to the third theory, the complaint relies on essentially one conclusory allegation: that

12

1  Parker, Samson, Bidwell, and Garza ratified the failures that led to Figueira's death.  First Am.
2  Compl. ¶ 48.  This does not suffice to withstand the defendants' motion.

3  As to the second theory, acts of omission, Castillo alleges Yuba and Sutter
4  Counties had a policy of deliberate indifference to the mental health needs of inmates, did not
5  conduct mental-health assessments, did not create mental-health treatment plans, did not follow
6  the professional judgments and recommendations of its psychiatric experts, did not promptly
7  evaluate the needs of its inmates, and took no precautions to prevent suicides among mentally ill
8  inmates.  First Am. Compl. ¶ 47.  The factual allegations underlying these claims are
9  (1) Figueira's suicide and (2) the deaths of two other inmates in the previous three years.  *Id.* ¶ 32.

10  Castillo requests judicial notice of a 2011 Sutter County Grand Jury report that
11  includes the report of an ad hoc committee on claims of deficiencies in the Sutter County Jail
12  Nurses Program.  Pl.'s Request for J. Notice, Ex. A, ECF No. 11-1.  The report is a public
13  document whose existence is not subject to reasonable dispute, and is subject to judicial notice,
14  *see McVey v. McVey*, 26 F. Supp. 3d 980, 984 (C.D. Cal. 2014), *appeal dismissed* (Apr. 22,
15  2015), but judicial notice does not establish the truth of the report's contents, *see Missud v.*
16  *Nevada*, 861 F. Supp. 2d 1044, 1054 (N.D. Cal. 2012), *aff'd*, 520 F. App'x 534 (9th Cir. 2013).

17  In *Connick*, the Supreme Court reiterated the "tenuous" nature of a municipality's
18  liability in an "omissions" case.  131 S. Ct. at 1359–60.  It held "[a] pattern of similar
19  constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate
20  deliberate indifference for purposes of failure to train."  *Id.* at 1360 (quoting *Bd. of Cnty.*
21  *Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409 (1997)).  Only "in a narrow range of
22  circumstances" can one incident establish an entity's liability under *Monell*.  *See id.* at 1361
23  (quoting *Bryan Cnty.*, 520 U.S. at 409).  In the case before the Court in *Connick*, the plaintiff
24  traced his underlying criminal conviction to the municipality's alleged policy of inadequately
25  training its prosecutors about *Brady* violations.  *Id.* (citing *Brady v. Maryland*, 373 U.S. 83
26  (1963)).  In the ten years preceding the plaintiff's trial, state courts had overturned four other
27  convictions for *Brady* violations.  *Id.* at 1360.  But these four reversals were not so similar to the
28  plaintiff's case to have put the municipal defendant on notice of a deficient policy.  *Id.*

Here, the complaint's allegations do not "nudge[] the[] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Figueira's suicide alone does not plausibly establish that Yuba and Sutter County provided employees with inadequate training by de facto policy. Bock's and Prasad's deaths in the previous three years are tragic examples of perhaps similar situations, but leave no more than the possibility that the Counties' omissions "amount to deliberate indifference to a constitutional right." *Clouthier*, 591 F.3d at 1249 (quotation marks omitted). Neither does the grand jury committee report on the Sutter County Jail Nurses Program carry the complaint across the line. None of Castillo's allegations relates to nursing.

Nevertheless, in this situation, where additional factual allegations "could have cured the deficiency in the *Monell* claim," *Hernandez*, 666 F.3d at 637, Castillo is granted leave to allege additional facts to support her theory of the Counties' liability.

E. Title II of the ADA and Section 504 of the Rehabilitation Act

Title II of the ADA applies to state and local governments. *See Daubert v. Lindsay Unified Sch. Dist.*, 760 F.3d 982, 985 (9th Cir. 2014); *Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1214–15 (9th Cir. 2008). It broadly forbids discrimination on the basis of disability: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under Title II of the ADA, a plaintiff must allege:

> (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability.

*Simmons*, 609 F.3d at 1021 (quoting *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004)) (alterations in *Simmons*). "Title II provides for liability only against public entities . . . ." *Wilkins-Jones v. Cnty. of Alameda*, 859 F. Supp. 2d 1039, 1045 (N.D. Cal. 2012).

Section 504 of the Rehabilitation Act prohibits discrimination on the basis of a disability "under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C.

14

1  § 794(a). A plaintiff must show "(1) he is an 'individual with a disability'; (2) he is 'otherwise
2  qualified' to receive the benefit; (3) he was denied the benefits of the program solely by reason of
3  his disability; and (4) the program receives federal financial assistance." *Weinreich v. L.A. Cnty.*
4  *Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997) (emphasis, footnote, and citations
5  omitted).

6  Here, Castillo alleges Figueira had a disability and alleges Sutter County (but not
7  Yuba County or the individual defendants) received federal financial assistance. First Am.
8  Compl. ¶¶ 56–58. She alleges he "was discriminated against in the provision of appropriate
9  placement and medical and/or mental health services because of his disability (mental illness), in
10 that he was not placed in a setting, or provided appropriate services, to reasonably accommodate
11 his disability and treatment needs." *Id.* ¶ 59. In other words, she alleges he received inadequate
12 treatment for his mental illness. But "[t]he ADA prohibits discrimination because of disability,
13 not inadequate treatment for disability." *Simmons*, 609 F.3d at 1022. The defendants cannot have
14 violated the ADA by failing to attend to the medical needs of disabled prisoners. "The ADA does
15 not create a remedy for medical malpractice." *Id.* (quoting *Bryant v. Madigan*, 84 F.3d 246, 249
16 (7th Cir. 1996)). Because "[t]here is no significant difference in analysis of the rights and
17 obligations created by the ADA and the Rehabilitation Act," *Zukle v. Regents of Univ. of Cal.*,
18 166 F.3d 1041, 1045 n.11 (9th Cir. 1999), the court concludes the same is true for section 504 of
19 the Rehabilitation Act.

20 The motion is granted as to the ADA and Rehabilitation Act claims. Because
21 Title II of the ADA does not apply to private parties, the motion is granted without leave to
22 amend as to the individual defendants on this claim. Otherwise, Castillo is granted leave to
23 amend if possible within the confines of Federal Rule of Civil Procedure 11.

24 IV.    CONCLUSION

25 This order resolves ECF No. 8. The motion is GRANTED IN PART as follows:
26 (1) The first claim is dismissed without leave to amend as to Yuba County and
27 Sutter County and dismissed with leave to amend as to defendants Parker, Samson, Bidwell, and
28 Garza;

(2) The second claim is dismissed with leave to amend;

(3) The third claim is dismissed with leave to amend;

(4) The fourth claim is dismissed with leave to amend as to defendants Parker, Samson, Bidwell, Garza, Yuba County, and Sutter County;

(5) The fifth claim for violations of Title II of the ADA is dismissed with leave to amend as to Sutter County and Yuba County and without leave to amend as to the individual defendants; the fifth claim for violations of section 504 of the Rehabilitation Act is dismissed with leave to amend; and

(6) The motion is denied as to the first and fourth claims against defendant Brandwood.

IT IS SO ORDERED.

DATED: October 22, 2015.

_____
UNITED STATES DISTRICT JUDGE